IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNION PACIFIC RAILROAD COMPANY, a Delaware corporation, ) ) ) Plaintiff, ) ) v. ) ) PERRETT CONSTRUCTION, LTD., ) a Nebraska corporation, ) ) Defendant. ) | CASE NO. 8:11CV138<br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on the Motion for Summary Judgment (Filing No. 36) filed by Plaintiff Union Pacific Railroad Company ("UP"), and the Motion to Defer Consideration of Plaintiff's Motion for Summary Judgment to Allow Time for Discovery Pursuant to Fed. R. Civ. P. 56(d) (Filing No. 48) filed by Defendant Perrett Construction, LTD. ("Perrett"). For the reasons discussed below, both Motions will be denied.

## FACTUAL BACKGROUND

Unless noted otherwise, the following facts are those that are stated in the briefs and supported by pinpoint citations to evidence in the record, that the parties have admitted, or that the parties have not properly resisted as required by NECivR 56.1 and Federal Rule of Civil Procedure 56.

UP is a Delaware corporation that operates a Class I railroad in twenty-three midwestern, northwestern, southwestern, and western states, one of which is Nebraska. Perrett is a Nebraska corporation doing business in Nebraska.

On or about December 19, 2005, UP and Perrett entered into a Construction Contract (the "Contract") under which UP agreed to pay Perrett to construct a 118-foot, two

track bridge near Winterpark, Colorado (the "Job Site").  Section 18 of the Contract, titled "GENERAL INDEMNITY," states:

> The Contractor [Perrett] shall indemnify and hold harmless the Railroad [UP], its affiliates, their officers, agents and employees, against and from any and all liability, loss, damage, claims, demands, costs and expenses of whatsoever nature, including court costs and attorneys' fees, arising from or growing out of any injury to or death of persons whomsoever (including officers, agents and employees of the Railroad, of the Contractor and of any subcontractor, as well as other persons) or loss of or damage to property whatsoever (including property of or in the custody of the Railroad, the Contractor or any subcontractor as well as other property).  The right to indemnify shall accrue when such injury, death, loss or damage occurs from any cause and is associated in whole or in part with the work performed under this agreement, a breach of the agreement or the failure to observe the health and safety provisions of the agreement or any activity or omission arising out of performance or nonperformance of this agreement.  However, the Contractor shall not indemnify the Railroad when the loss is caused by the sole negligence of the Railroad.

(Filing No. 1-1, § 18.A.)  In a previous Memorandum and Order, the Court construed this provision.  (Filing No. 32.)  The Court found that this provision did not require Perrett to indemnify UP to the extent injuries were caused by the negligence of UP's employees or agents. Section 24 of the Contract, titled "COMPLIANCE WITH LAWS/ENVIRONMENTAL COMPLIANCE," states:

> In the prosecution of the work covered by this agreement, the Contractor shall comply with all applicable federal, state and local laws, regulations and enactments affecting the work including all applicable environmental laws and regulations and air emission standards.  The Contractor shall use only such methods as are consistent with safety, both as concerns the Contractor, the Contractor's agents and employees, the officers, agents, employees and property of the Railroad and the public in general.  The Contractor (without limiting the generality of the foregoing) shall comply with all applicable local, state and federal environmental and occupational safety and health acts and regulations. All Federal Railroad Administration regulations shall be followed when work is performed on the Railroad's premises.  If any failure by the Contractor to comply with any such laws, regulations, and enactments, shall result in any fine, penalty, cost or charge being assessed, imposed or charged against the Railroad, the Contractor shall reimburse and indemnify

2

> the Railroad for any such fine, penalty, cost, or charge, including without limitation attorney's fees, court costs and expenses. The Contractor further agrees in the event of any such action, upon notice thereof being provided by the Railroad, to defend such action free of cost, charge, or expense to the Railroad.

(Filing No. 1-1, § 24.) UP did not allege in its Complaint that Perrett breached the Contract by failing to comply with § 24. (*See* Filing No. 1; *see also* Filing No. 47-2, at CM/ECF p. 2.)[1]

Prior to January 3, 2006, an excavation had been taking place at the Job Site. UP had a rule that stated: "To protect an employee from falling into an excavation, use either a guardrail system or fences." (Filing No. 47-5, at CM/ECF p. 2.) As of January 3, 2006, UP had not implemented a fall-protection plan for the Job Site. (Filing No. 47-2, at CM/ECF p. 6-7; Filing No. 37-3, at CM/ECF p. 10, 174:25-175:6.)

On or about January 3, 2006, Thomas Easler, a UP employee qualified and trained in fall protection (Filing No. 47-2, at CM/ECF p. 5-6), and Chris Turnbull, Perrett's superintendent, met for a safety briefing. They discussed the need for implementing some type of fall protection for the Job Site due to the excavation. Because UP had not specified what it would require, Easler called another UP employee in an attempt to determine what fall protection should be implemented. (Filing No. 37-2, at CM/ECF p. 12, 42:6-8, 43:2-5; Filing No. 37-3, at CM/ECF p. 9-10, 170:14-16, 174:25-175:7.) Easler did not receive an answer. (Filing No. 37-2, at CM/ECF p. 12, 42:9-11.) Easler and Turnbull discussed erecting a temporary fence. Turnbull came up with the idea to use "T-posts" to support the fence. Easler provided the posts.

---

[1] Section 6 of the Contract states: "This agreement shall be governed, construed, and enforced in accordance with the laws of the State of Nebraska." (Filing No. 1-1.)

3

Easler was at the Job Site to provide "flagging protection" while Bert Saxton, a Perrett employee, welded posts into place on the side of the bridge. Saxton was not a certified welder and had never before welded the type of post he was asked to weld. Easler had asked Turnbull if Perrett had any certified welders on the Job Site. Perrett did not. Easler was the site supervisor and in charge of safety on the Job Site. (Filing No. 47-2, at CM/ECF p. 5; Filing No. 47-3, at CM/ECF p. 2, 168:24-169:1.) He had the authority to stop the work at the Job Site if he saw someone doing something unsafe, and could shut down the Job Site until the safety concern was alleviated. (Filing No. 47-3, at CM/ECF p. 2, 167:22-168:9.) As the site supervisor in charge of safety, Easler permitted Saxton to weld the fence posts because he did not consider it unsafe to have an uncertified welder welding the posts. (*Id.* at CM/ECF p.6-7, 237:22-238:21.)

At some point after the posts had been welded, Easler was on the bridge attempting to inspect a retaining wall. He leaned against one of the newly welded posts hoping to get a better view of the wall. The post gave way, and Easler fell to the ground. He sustained injuries to his head, shoulders, and neck, and was transported to a hospital to receive treatment for his injuries. While at the hospital, a drug test was administered. The test indicated marijuana THC was present in his system. (Filing No. 47-2, at CM/ECF p. 6; Filing No. 47-4, at CM/ECF p. 3.) It was against UP rules for an employee to appear for work with a controlled substance in his or her system. (Filing No. 47-2, at CM/ECF p. 6; Filing No. 47-4, at CM/ECF p. 3; Filing No. 47-6.)

Easler filed a lawsuit against UP under the Federal Employers' Liability Act ("FELA"). During the course of the FELA litigation, UP and Easler participated in mediation and independent settlement talks. On March 9, 2009, before trial, UP and Easler reached an

agreement under which UP would pay Easler $165,000.00 both as consideration for resigning from UP (Filing No. 37-6; Filing No. 47-2, at CM/ECF p. 9), and for dismissing his FELA claim against UP. Thereafter, UP notified Perrett of its intent to seek indemnification from Perrett under the Contract.

## DISCUSSION

### I. Motion for Summary Judgment

#### A. Standard

"Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Gage v. HSM Elec. Prot. Serv., Inc.,* 655 F.3d 821, 825 (8th Cir. 2011) (citing Fed. R. Civ. P. 56(c)). The court will view "all facts in the light most favorable to the non-moving party and mak[e] all reasonable inferences in [that party's] favor." *Schmidt v. Des Moines Pub. Sch.,* 655 F.3d 811, 819 (8th Cir. 2011). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue . . . Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The moving party need not negate the nonmoving party's claims by showing "the absence of a genuine issue of material fact." *Id.* at 325. Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Id.*

In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating "'a genuine issue of material fact' such that [its] claim should proceed to trial." *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)), *cert. denied,* 130 S. Ct. 1074 (2010). The nonmoving party "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Matsushita,* 475 U.S. at 586-87)), *cert. denied,* 132 S. Ct. 513 (2011). "'[T]he mere existence of *some* alleged factual dispute between the parties'" will not defeat an otherwise properly supported motion for summary judgment. *Quinn v. St. Louis Cnty.,* 653 F.3d 745, 751 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986)). "In ruling on a motion for summary judgment, the district court is not obligated to wade through and search the entire record for some specific facts which might support" a party's claim. *Holland v. Sam's Club*, 487 F.3d 641, 644 (8th Cir. 2007) (quotations omitted).

In other words, in deciding "a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts.'" *Ricci v. DeStefano*, 129 S. Ct. 2658, 2677 (2009) (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party"–where there is no "'genuine issue for trial'"–summary judgment is appropriate. *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968)).

**B. Analysis**

UP contends that its Motion for Summary Judgment should be granted because (1) the Contract clearly and unambiguously requires Perrett to defend and indemnify UP if Perrett's employees cause an accident or injury to UP's employees, (2) the injuries that led to Easler filing the FELA lawsuit were "caused, in whole or in part, by Perrett's work," (3) there is no evidence that UP was negligent, (4) UP's settlement with Easler was reasonable and made in good faith, and (5) UP sustained "liability, loss, damage, costs, and expenses" that arose out of Easler's FELA lawsuit. (Filing No. 37, at CM/ECF p. 5-6.) UP maintains that Perrett breached the Contract when it failed to defend and indemnify UP with regard to Easler's FELA claim. UP asserts that, because Perrett has a duty to defend and indemnify UP, it is only required to show that it was potentially liable to Easler and that the settlement was reasonable for it to recover on its breach of contract claim. UP argues that Perrett cannot now litigate the liability relevant to the FELA lawsuit for purposes of showing that its settlement with Easler was unreasonable.

Perrett contends that the record contains evidence sufficient to show that Easler's injuries were caused by the negligence of UP's employees or agents and, therefore, Perrett does not have an obligation to defend or indemnify UP.[2] Perrett asserts that it is not attempting to litigate the issue of liability for purposes of showing that the settlement with Easler was unreasonable. Instead, Perrett argues that it is attempting to establish the parties' relative negligence because such a finding is necessary to demonstrate whether

---

[2] Both parties agree that, to the extent Perrett has a duty to defend under the Contract, it is not separate and distinct from its duty to indemnify. (*Id.* at CM/ECF p. 14; Filing No. 46, at CM/ECF p. 19-20.)

7

and to what extent Easler's claim against UP is covered by the Contract's indemnity provision.

The parties previously presented to the Court the question of whether § 18 of the Contract violates Nebraska's anti-indemnity statute[3] and is therefore void and wholly unenforceable. (Filing No. 25.) Perrett argued that § 18 was void because it purports to require Perrett to indemnify UP for UP's own negligence unless UP's negligence was the sole cause of the loss. UP asserted that Perrett's argument lacked merit because § 18 did not require Perrett to indemnify UP for UP's own negligence. UP also asserted that it would be necessary for the finder of fact to determine whether UP was negligent for purposes of deciding whether UP is entitled to indemnification under the Contract. The Court did not declare § 18 void and wholly unenforceable. (Filing No. 32) Instead, it construed the provision in harmony with the purpose of Nebraska's anti-indemnity statute: "to provide that on construction projects, parties . . . remain responsible for their own negligence."[4] *Kuhn v. Wells Fargo Bank*, 771 N.W.2d 103, 118 (Neb. 2009). The Court indicated that § 18 did not impose an obligation on Perrett to indemnify UP to the extent that the negligence of UP's employees or agents caused Easler's injuries. (*Id.*) The Court also indicated that material issues of fact remained with respect to whether negligence caused Easler's injuries and, if so, which persons or entities were negligent. (*Id.*)

UP's breach of contract claim is based on Perrett's failure to defend and indemnify UP, and the parties agree that Perrett's duty to defend is not separate and distinct from its

---

[3] Neb. Rev. Stat. § 25-21,187(1).

[4] "Under FELA, [a railroad] possesse[s] a 'nondelegable duty to furnish a safe place for its employees to work.'" *See Burlington N., Inc. v. Hughes Bros., Inc.*, 671 F.2d 279 (8th Cir. 1982) (quoting *Shenker v. Baltimore & Ohio R.R. Co.*, 374 U.S. 1, 7 (1963)).

8

duty to indemnify. Perrett does not have an obligation to indemnify UP under the Contract if the negligence of UP's employees or agents caused Easler's injuries. Therefore, to the extent that the negligence of UP or its employees or agents caused Easler's injuries, Perrett would not have an indemnity obligation to breach.[5]

Based on the evidence Perrett has pointed to in the record, a reasonable finder of fact could conclude that Easler's injuries were caused, at least in part, by the negligence of UP and its employees or agents. As UP admits, it had a duty to maintain a safe place for its employees to work. Despite the excavation taking place at the Job Site and its own rules that called for the use of "a guardrail system or fences" in order "to protect [its] employee[s] from falling into an excavation" (Filing No. 47-5, at CM/ECF p. 2), the record reveals that UP had not implemented a fall-protection plan to protect its employees from the dangers present at the Job Site. A reasonable finder of fact could conclude that UP's failure to follow its own rules and failure to provide for a fall-protection plan at the Job Site caused Easler's injuries.[6]

---

[5] *See Lair v. Oglesby*, 14 F.3d 15, 17 (8th Cir. 1993) (citing *Morris v. Am. Nat'l Can Co.*, 988 F.2d 50, 52 n.1 (8th Cir. 1993); (*Little Earth of the United Tribes, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 807 F.2d 1433, 1438 (8th Cir. 1986)) ("Law of the case doctrine prevents relitigation of issues already decided in a case, including matters decided implicitly, rather than explicitly."); *see also Murphy v. FedEx Nat'l LTL, Inc.*, 618 F.3d 893, 905 (8th Cir. 2010) (quoting *United States v. Bartsh*, 69 F.3d 864, 866 (8th Cir. 1995)) ("[The law of the case] doctrine 'requires courts to adhere to decisions made in earlier proceedings in order to ensure uniformity of decisions, protect the expectations of the parties, and promote judicial economy.'").

To the extent that § 24 imposes an obligation on Perrett to indemnify UP, like § 18, it would be subject to Neb. Rev. Stat. § 25-21,187(1) and would not impose on Perrett the obligation to indemnify UP to the extent that injuries are caused by the negligence of UP's employees or agents.

[6] *See Wilke v. Woodhouse Ford, Inc.*, 774 N.W.2d 370, 379 ( Neb. 2009):

Ordinary negligence is defined as the doing of something that a reasonably careful person would not do under similar circumstances, or the failing to do something that a reasonably careful person would do under similar circumstances. In order to prevail in a negligence action, there must be a legal duty on the part of the defendant to protect the plaintiff from injury, a failure to discharge that duty, and damage proximately caused by the failure to discharge that duty.

9

It is undisputed that Easler was an employee of UP. Perrett contends that Easler's negligence may be imputed to UP. See NJI2d Civ. 6.30. UP has not disputed this contention. Based on the evidence in the record, a reasonable finder of fact could conclude that Easler's own negligence caused his injuries. Easler had fall-protection training and qualifications. He was the site supervisor and had the authority to shut down the Job Site if he saw someone engaging in unsafe conduct. Despite his authority, training, and qualifications, he supplied the post that gave way and led to his fall, and he permitted an untrained welder to weld that post to the bridge. Furthermore, a drug test revealed the presence of a controlled substance in his system at the time of the incident that could have affected his performance.

Material questions of fact remain in this case, the resolution of which will dictate whether Perrett has an obligation to indemnify UP and, if so, to what extent. Therefore, UP's Motion for Summary Judgment will be denied.[7]

## II. Motion to Defer

Perrett represents that it has not had the opportunity to conduct any deposition discovery of UP. It contends that, before the Court rules on UP's Motion for Summary Judgment, it should be afforded an opportunity to depose UP so that it can obtain discoverable information concerning the amount of the settlement UP paid to Easler to

---

[7] UP has raised the issue of the reasonableness of the settlement between Easler and UP. Even if there were no material questions of fact with respect to whether Perrett is obligated to indemnify UP, Perrett has pointed to evidence tending to show that UP paid $165,000.00 both as consideration for procuring Easler's retirement and for settling the FELA lawsuit. (Filing No. 37-6; Filing No. 47-2, at CM/ECF p. 9). Perrett contends that nothing in the Contract can be read to require Perrett to indemnify UP for buying out Easler's employment contract, and that "the payment of settlement consideration for claims independent of Easler's FELA lawsuit precludes the entry of summary judgment as to the reasonableness of the settlement amount." (Filing No. 46, at CM/ECF p. 19.) UP has not addressed this contention. The Court will deny UP's Motion with respect to the issue of the reasonableness of the settlement between Easler and UP.

procure his retirement and the circumstances surrounding UP's failure to implement a fall-protection plan at the Job Site.  Perrett also represents that Easler has indicated in his deposition testimony that he made telephone calls to other UP employees because he was not certain of the requirements for the warning fence to be constructed at the Job Site.  Perrett asserts it should have the opportunity to question UP regarding its knowledge of Easler's phone calls and the information other UP employees conveyed to Easler.  Perrett states, however, that it believes the record contains sufficient disputed issues of material fact to justify the denial of UP's Motion for Summary Judgment, and that it has only filed its Motion to Defer out of an abundance of caution and in case the Court disagreed with its evaluation of the record.  As stated above, the Court will deny UP's Motion for Summary Judgment.  Therefore, the Court will deny Perrett's Motion to Defer as moot.

Accordingly,

IT IS ORDERED:

1. The Motion for Summary Judgment (Filing No. 36) filed by the Plaintiff Union Pacific Railroad Company is denied; and

2. The Motion to Defer Consideration of Plaintiff's Motion for Summary Judgment to Allow Time for Discovery Pursuant to Fed. R. Civ. P. 56(d) (Filing No. 48) filed by Defendant Perrett Construction, LTD., is denied as moot.

DATED this 21st day of June, 2012.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge